UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRENDA L. C.[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:18-CV-00328-JVB-MGG |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of the ) | |
| Social Security Administration,[2] ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Brenda L. C. ("Ms. C.") seeks judicial review of the Social Security Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") under Title II. On February 25, 2019, this matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b). For the reasons below, the undersigned **RECOMMENDS REMAND** of the Commissioner's decision.

**I.    RELEVANT BACKGROUND**

On August 15, 2014, Ms. C. filed her application for DIB based on the totality of her impairments, which include a prolapsed rectum and bladder, herniated disks in her

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the Plaintiff by first name and last initial only.

[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security").

back and neck, a pinched nerve in her lower back, high cholesterol, gastrointestinal reflux disease, bipolar disorder, depression, chronic pain syndrome, and chronic migraine headaches. Ms. C. alleges that these symptoms severely limit her daily activities and cause her to sit or lie down for most of the day. Ms. C. alleges a disability onset date of June 20, 2013, at which time she stopped working as a supervisor in the food service industry—a position she had held at various establishments since 2007, and an industry in which she had worked since 2001. Both before and after the alleged onset date, Ms. C. received numerous treatments for her impairments from several different physicians.

SSA denied Ms. C.'s claim initially and upon reconsideration. Ms. C. testified before an Administrative Law Judge ("ALJ") at a hearing on November 3, 2016, after which the ALJ issued a decision. The ALJ found that Ms. C.'s spinal disorder, chronic pain, depression, and bipolar disorder are severe medical impairments. The ALJ then determined that Ms. C. has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), but with additional limitations.[3] Based on this RFC, the ALJ concluded that Ms. C. is not able to perform her past relevant work as a food service supervisor but that she could find other work that exists in significant numbers in the national economy. Consequently, the ALJ decided that Ms. C. is not disabled under the Social Security Act and denied her DIB.

---

[3] Namely, that Ms. C. can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; can follow simple but not detailed instructions; can perform assigned tasks but not always at production rate pace; and can meet end of the day work goals.

The Social Security Appeals Council granted Ms. C.'s request for review and on July 6, 2018, adopted the findings of ALJ's decision, save one non-dispositive clerical error.[4] The Appeals Council's decision denying Ms. C. DIB is thus the final decision of the Commissioner. 20 C.F.R. § 404.900(a)(4)–(5). Ms. C. seeks judicial review of the Commissioner's decision in this Court pursuant to 28 U.S.C. § 405(g).[5]

## II. DISABILITY STANDARD

To qualify for DIB, a claimant must be "disabled" under the Social Security Act ("Act"). 42 U.S.C. § 423(a)(1). A person is "disabled" under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

An ALJ must follow a five-step sequential evaluation process to decide whether a DIB claimant is disabled. *See* 20 C.F.R. § 404.1520. The five-step process requires an ALJ to determine (1) whether the claimant is employed, (2) whether the claimant's impairments are severe, (3) whether any of the claimant's impairments are conclusively disabling, (4) whether the claimant can perform her past relevant work based upon her RFC, and (5) whether the claimant is capable of performing other available work.

---

[4] At different portions in the ALJ's decision, Ms. C. was found to have both mild and moderate limitations in maintaining social functioning. The Appeals Council clarified that Ms. C. had mild, not moderate, limitations in maintaining social functioning and noted that the clerical error was harmless because the ALJ did not include social limitations in the RFC analysis.

[5] In this Court, Ms. C. contests only the portions of the Appeals Council's decision that adopt the ALJ's findings. Accordingly, the Court—following the parties' lead—directly reviews the ALJ's decision.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court's judicial review of disability benefits cases is deferential. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The ALJ's factual determinations must be affirmed if supported by "substantial evidence." 42 U.S.C. § 405(g). A reviewing court must review the entire administrative record, but it does not reconsider facts or evidence or substitute its judgment for that of the ALJ. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Where the ALJ's decision contains errors of fact or logic, however, the deference owed to the ALJ's decision is lowered. *Thomas*, 745 F.3d at 806.

Moreover, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ cannot "cherry pick" the record to support a finding of non-disability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). An ALJ need not, however, address every piece of evidence in the record so long as she builds a "logical bridge" from the evidence to her conclusions. *Id.* At a minimum, an ALJ must demonstrate that she considered the important evidence so that a reviewing court can "trace the path of [her] reasoning." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

Therefore, the question on judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision is

4

supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Elder*, 529 F.3d at 413.

IV. **ANALYSIS**

    A. **Issues for Review**

Ms. C. challenges the ALJ's RFC determination on three separate grounds. First, Ms. C. argues that the ALJ erred in evaluating her subjective complaints of pain. Second, Ms. C. argues that the ALJ erred in not addressing all of her medical impairments that were in the record. Third, Ms. C. argues that the hypothetical question the ALJ posed to the vocational expert did not adequately incorporate all of her limitations.

    B. **RFC Determination**

A claimant's RFC is her maximum ability to perform work activities on a sustained basis despite the limitations from her impairments. 20 C.F.R. § 404.1545(a)(1). To determine a claimant's RFC, an ALJ must consider all of her symptoms, their consistency with the objective medical evidence and other evidence in the record, and their intensity, persistence, and limiting effects. *Id.*

        1. **The ALJ's Subjective Symptom Analysis is Not Supported by Substantial Evidence.**

Ms. C. argues that the ALJ erred in evaluating her subjective symptom

allegations. In assessing a claimant's subjective symptoms, the ALJ must first decide, based on objective medical evidence, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Then the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which she is limited in performing work-related activities. 20 C.F.R. § 404.1529(c). Under this latter step, the ALJ must consider objective medical evidence and "other evidence," which includes statements made by the individual, 20 C.F.R. § 404.1529(c)(2), as well as the following: daily activities; location, duration, and frequency of the symptoms; precipitating and aggravating factors; medications; other treatments; other measures taken for relief; and other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(3). In determining the extent to which the claimant's symptoms affect her capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms "can reasonably be accepted as consistent with the objective medial evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ concludes by factoring this symptom analysis into the RFC determination. *See* 20 C.F.R. § 404.1545(a)(3).

In addition to the text of the relevant regulations, the Seventh Circuit has spoken directly on symptom evaluations conducted by ALJs. In *Cole v. Colvin*, Judge Posner observed that SSR 16-3p, the SSA's revised interpretive guidelines,

> [M]eant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by claimants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.

6

831 F.3d 411, 412 (7th Cir. 2016). The Seventh Circuit was careful, however, to clarify that a claimant's statements about the intensity, persistence, and limiting effects of her symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.* at 416 (citation omitted). Consequently, an ALJ, while she cannot judge a claimant's character, may assess the veracity and consistency of a claimant's subjective assertions of pain.

Moreover, in reviewing subjective accounts of a claimant's symptoms, a reviewing court will not overturn an ALJ's decision to discredit such testimony unless the decision is "patently wrong." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). A decision is patently wrong when it lacks explanation and relies on inferences that are not based on specific factual findings that are supported by the evidence. *Id.*

### a. The ALJ's Analysis of the "Other Evidence" Is Incomplete.

Here, the ALJ found that Ms. C. has multiple medically determinable impairments but that Ms. C.'s account of her subjective symptoms was not "fully consistent" with the evidence in the record. [DE 12 at 30]. The ALJ noted that she considered "objective medical evidence, medical treatment, medications taken, comments regarding claimant's activities of daily living, work history and opinions" and that SSR 16-3 was considered in evaluating Ms. C.'s allegations of pain. [DE 12 at 30–31]. In evaluating Ms. C.'s symptoms, however, the ALJ focuses primarily on the objective medical evidence. [DE 12 at 30–33]. For instance, the ALJ relies upon medical records that show a consistent lack of focal deficit with consistently documented normal

7

gait to support Ms. C.'s capacity to perform light work with specific additional limitations. Therefore, if the second prong of the symptom analysis rested solely on objective medical evidence, the ALJ's decision would be far from "patently wrong." However, the ALJ must also analyze "other evidence," including Ms. C.'s testimony regarding her subjective complaints of pain and limited activities of daily living in addition to the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(3). Indeed, pain alone can be disabling without objective medical evidence to support it. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (2014); *Carradine v. Barnhart*, 360 F.3d 751, 753 (2004).

The ALJ's analysis does not adequately discuss any such "other evidence." For instance, Ms. C. directs the Court's attention to her testimony that she rests for much of the day and needs to shift positions every fifteen minutes and is most comfortable when lying down. Ms. C. also testified that she does not prepare meals, sweep, vacuum, wash dishes, or do laundry, and that her niece performs such housework for her twice per week. Additionally, Ms. C. testified that she cannot dress herself, but she can, on occasion, shower on her own. The ALJ does not reference this testimony when determining the intensity, persistence, and limiting effects of Ms. C.'s symptoms, nor does the ALJ account for any related limitations in the RFC.

The ALJ did acknowledge, briefly, Ms. C.'s alleged limitations in daily activities as part of the paragraph B analysis related to her mental impairments in the Step Three Listing determination. As the ALJ's decision notes, however, the Step Three determination is separate from the RFC assessment, the latter requiring a more detailed, itemized account of the claimant's various functions. And in her RFC analysis, the ALJ

does not mention Ms. C.'s testimony regarding her limited activities of daily living, which is a relevant, subjective factor that the ALJ should consider. *See* 20 C.F.R. § 404.1529(c)(i). The Seventh Circuit, has implored ALJs to consider activities of daily living but has just as clearly cautioned that the ability to perform minimal daily activities "do[es] not establish that a person is capable of engaging in substantial physical activity." *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (quoting *Clifford*, 227 F.3d at 872). It follows that if a person cannot perform minimal daily activities, that person is even more unlikely to be able to perform work-related physical activity.

Therefore, the ALJ's subjective symptom analysis fails in two ways. First, the ALJ did not clearly consider all the relevant "other evidence." Second, the ALJ did not articulate a clear rationale for crediting Ms. C. with limitations in her activities of daily living in the Listing analysis based on their connection to her physical issues but then later seemingly reject those same limitations in the RFC analysis. As a result, the undersigned cannot trace the path of the ALJ's reasoning.

### b. The ALJ's Finding of Inconsistencies Is Flawed.

The ALJ based her subjective symptom analysis on her conclusion that Ms. C.'s subjective statements were not "fully consistent" with the evidence in the record. [DE 12 at 30]. Consistency with the objective medical evidence and other evidence is the legal standard by which an ALJ is to weigh a claimant's subjective statements. 20 C.F.R. § 404.1529(a). An ALJ cannot, however, "cherry pick" the record to support a decision denying DIB while ignoring evidence that would support a disability finding. *Denton*, 596 F.3d at 425.

9

The ALJ relied upon "inconsistencies" in discrediting Ms. C.'s subjective statements, noting that the inconsistencies detracted from the persuasiveness of Ms. C.'s subjective reports. [DE 12 at 31]. Yet the ALJ identified only a single inconsistency. Specifically, the ALJ noted Ms. C.'s initial function report, completed on September 11, 2014, on which Ms. C. checked a box that indicates she does not drive and compared it to Ms. C.'s husband's third-party function report, completed the same day, on which he checked a box that indicates she does drive. The ALJ relied upon these different answers to the same question in finding that the subjective information Ms. C. provided was "less than dependable." [DE 12 at 31].

As Ms. C. suggests, however, the ALJ's conclusion suggests that the ALJ may not have considered Ms. C.'s and her husband's function reports in their totality. On Ms. C.'s function report, just below where she checked that she could not drive, she specified that she drives "sometimes, back and forth to doctor visits and therapy." [DE 12 at 251]. Similarly, Ms. C.'s husband's function report includes a statement that she drives "only to her doctors' appointments and her therapy." [DE 12 at 270].

The ALJ did not discuss these additional written statements, which appear directly below the checked boxes referenced in the ALJ's decision. The ALJ is required by law to confront evidence that could warrant a disability finding and explain why it was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Had the ALJ considered the written statements on the function reports here, it is possible that the ALJ would be left with no grounds for finding inconsistencies in Ms. C.'s subjective statements. Therefore, the ALJ's finding of inconsistencies to discredit Ms. C.'s alleged

10

subjective symptoms is not based on substantial evidence, justifying remand for consideration of the entirety of the record in determining whether Ms. C.'s subjective statements depict accurately the intensity and persistence of her symptoms.

### 2. The ALJ Erred by Not Properly Addressing All of Ms. C.'s Medical Impairments Supported by the Record.

Ms. C. next argues that the ALJ did not consider all of her medical impairments both at Step Two and in determining her RFC. Specifically, Ms. C. claims that the ALJ did not address her sacroiliac joint issues, cervical disc problems, and migraines. The Commissioner argues that the ALJ's omission of these impairments is harmless error. While the ALJ need not address every piece of evidence in the record, the ALJ cannot ignore evidence that supports a finding of disability. *Denton*, 596 F.3d at 425. In fact, an ALJ's failure to discuss such evidence is not a harmless error. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Whether the ALJ considered Ms. C.'s sacroiliac joint issues and cervical disc problems is unclear. Perhaps those impairments were included in the ALJ's broader finding that Ms. C. suffers from a severe spinal disorder and chronic pain at Step Two, perhaps they were not; the ALJ does not explicitly say one or the other. But the Court need not unpack the ALJ'S finding of severe spinal disorder and chronic pain because the ALJ's failure to mention Ms. C.'s migraines at Step Two, in the RFC analysis, or anywhere else in the decision is dispositive on this appeal record.

An ALJ's error is harmless only where, upon correction of the error, the reviewing court can "predict[] with great confidence" that the ALJ will reinstate her initial decision on remand. *Spiva*, 628 F.3d at 353. In *Indoranto v. Barnhart*, a DIB claimant

suffered from, *inter alia*, severe headaches and blurred vision. 374 F.3d 470, 474 (7th Cir. 2004). The ALJ found that the claimant was not disabled but did not mention the claimant's headaches or blurred vision in the decision. *Id.* The Seventh Circuit reversed, holding that "although the ALJ need not discuss every piece of evidence in the record, [the ALJ] must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Id.* The ALJ in *Indoranto* did not do so, and her failure was therefore reversible error. *Id.*

Moreover, an ALJ must "consider the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c). In *Moon v. Colvin*, a DIB claimant who suffered from migraines, in addition to many physical impairments, was not found to be disabled. 763 F.3d 718, 720 (7th Cir. 2014). The ALJ's decision briefly discussed and discredited evidence of the claimant's migraines even though the record showed that the claimant had received continuous migraine treatment for the five years prior to adjudication. *Id.* at 721. The Seventh Circuit reversed, holding that the ALJ failed to adequately consider the claimant's migraines in determining the claimant's RFC. *Id.* at 723. Taken together, *Indoranto* and *Moon* confirm that an ALJ may not omit consideration of the effects of a claimant's migraines in determining the RFC.

In this case, the ALJ's failure to consider Ms. C.'s migraines is more dramatic than the ALJ analyses in *Indoranto* and *Moon*. Each gave at least a cursory nod to the claimant's migraines in determining the RFC. But here, the ALJ did not so much as mention Ms. C.'s alleged migraines anywhere in the decision.

Notably, the Commissioner admits that the ALJ did not consider Ms. C.'s migraines and that it would have been "appropriate" to do so. The Commissioner then advances three arguments, which he concedes are non-dispositive in isolation, that the ALJ's omission is nonetheless harmless error: (1) that Ms. C. did not list migraines in her disability application, (2) that Ms. C. did not mention migraines as a reason she could not perform sedentary work, and (3) that Ms. C. did not raise the omission to the Appeals Council.

The Commissioner's first two arguments are not persuasive. In *Clifford v. Apfel*, the claimant did not list her obesity in her DIB application, nor did she directly testify to it, but the Seventh Circuit found that "the evidence [of the claimant's obesity] should have alerted the ALJ that [the claimant] had another relevant impairment that could contribute to the cumulative effect of her other impairments." 27 F.3d 863, 873 (7th Cir. 2000); *see also* 20 C.F.R. § 404.1512(a) ("[The ALJ] will consider only impairment(s) you say you have or about which we receive evidence."). The record here clearly includes evidence of Ms. C.'s treatment for migraines, including one hospital admission for immediate migraine care. [*See* DE 12 at 670–75]. Similarly, the Commissioner's implication that Ms. C.'s failure to raise the ALJ's lack of discussion of her migraines to the Appeals Council precludes her from raising that argument before this Court is not grounded in the law. The Supreme Court has held that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel*, 530 U.S. 103, 112 (2000).

The Commissioner fails to show that the ALJ's RFC and disability determinations would not change on remand, even if the migraines were satisfactorily discussed in the ALJ's decision—and even if the arguments are considered in totality. Therefore, the ALJ's error in omitting discussion of Ms. C.'s migraines cannot be considered harmless, no matter the outcome of Ms. C.'s DIB application on remand.

### C.     Step Five Hypothetical Question

Lastly, Ms. C. argues that the hypothetical question the ALJ posed to the vocational expert did not adequately incorporate all of her limitations that were supported by the record. On remand, the ALJ must consider Ms. C.'s RFC consistent with the Court's order, which could change the formulation of a hypothetical question. Therefore, the undersigned recommends deferring to the ALJ on remand to craft a proper hypothetical question after determining Ms. C.'s RFC.

## V.     CONCLUSION

For the reasons above, the ALJ's denial of DIB is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner's decision denying Ms. C. disability benefits and **REMAND** this case to the Commissioner for further proceedings.

> **NOTICE IS HEREBY GIVEN** that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). **FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 19th day of November 2019.

<u>S/Michael G. Gotsch, Sr.</u>
Michael G. Gotsch, Sr.
United States Magistrate Judge
